**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PRESIDENT DONALD J. TRUMP, TRUMP PAYROLL CORP., 401 MEZZ VENTURE, LLC, 401 NORTH WABASH VENTURE, LLC, THC MIAMI RESTAURANT HOSPITALITY, LLC, TRUMP BRIARCLIFF MANOR DEVELOPMENT, LLC, TRUMP CHICAGO RETAIL, LLC, TRUMP MIAMI RESORT MANAGEMENT, LLC, TRUMP NATIONAL GOLF CLUB COLTS NECK, LLC, and TRUMP NATIONAL GOLF CLUB, LLC,

Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A. and JAMES DIMON,

Defendants.

Civil Action No. 1:26-cv-08731

Hon. Vernon S. Broderick

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

BACKGROUND ..... 2

LEGAL STANDARD ..... 6

ARGUMENT ..... 6

I. Because Mr. Dimon Was Fraudulently Joined, He Must Be Dismissed From This Action (Count II) ..... 6

II. Plaintiffs' Claims Against JPMorgan Fail for Multiple Reasons (Counts I, III & IV) ..... 7

A. New York and Ohio law apply to Plaintiffs' claims. ..... 7

B. Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing and for declaratory relief must be dismissed (Counts III and IV). ..... 8

1. The corporate Plaintiffs' claims are time-barred. ..... 9

2. Plaintiffs fail to plead a predicate breach of contract required to show a breach of the implied covenant of good faith and fair dealing. ..... 10

3. Because Plaintiffs have failed to state a breach of contract claim, their parallel claim for declaratory relief (Count III) also must be dismissed. ..... 14

C. Plaintiffs fail to state a trade libel claim (Count I). ..... 15

1. Plaintiffs' trade libel claim is barred by the statute of limitations. ..... 16

2. Plaintiffs allege insufficient facts to state a trade libel claim. ..... 16

3. Plaintiffs' trade libel claim does not concern goods or services. ..... 18

4. Plaintiffs failed to plead special damages. ..... 19

5. Plaintiffs have not plausibly alleged actual malice. ..... 20

III. Amendment Would Be Futile. ..... 22

CONCLUSION ..... 23

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Accelerated Moving & Storage v. Herc Rentals, Inc.*,
2022 WL 3907764 (Ohio Ct. App. Aug. 30, 2022) ....15, 18

*AIX Specialty Ins. Co. v. Big Limo, Inc.*,
547 F. Supp. 3d 757 (S.D. Ohio 2021) ....19

*Alvarado v. Mt. Pleasant Cottage Sch. Dist.*,
404 F. Supp. 3d 763 (S.D.N.Y. 2019)....17

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
671 F.3d 140 (2d Cir. 2011)....6

*Angel v. Reed*,
891 N.E.2d 1179 (Ohio 2008) ....9

*Angio-Med. Corp. v. Eli Lilly & Co.*,
720 F. Supp. 269 (S.D.N.Y. 1989)....15

*Apostolidis v. JP Morgan Chase & Co.*,
2012 WL 5378305 (E.D.N.Y. Nov. 2, 2012)....23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....6

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49 (2013)....8

*Atlanticare Mgmt., LLC v. Scottsdale Ins. Co.*,
2025 WL 1532433 (S.D.N.Y. May 29, 2025) ....14

*Ayres v. Teleios LS Holdings DE, LLC*,
2026 WL 450701 (S.D.N.Y. Feb. 17, 2026)....8

*Banks v. Cnty. of Westchester*,
168 F. Supp. 3d 682 (S.D.N.Y. 2016)....16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....6

*Benson v. N. Shore-Long Island Jewish Health Sys.*,
482 F. Supp. 2d 320 (E.D.N.Y. 2007) ....12, 13

*Biro v. Conde Nast*,
807 F.3d 541 (2d Cir. 2015)....20, 21

*Burton v. Label, LLC*,
344 F. Supp. 3d 680 (S.D.N.Y. 2018)....12

*Cabello-Rondon v. Dow Jones & Co.*,
720 F. App'x 87 (2d Cir. 2018) ....21

*Cammarata v. Cammarata*,
878 N.Y.S.2d 163 (N.Y. App. Div. 2009) ....................20

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988)....................7

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991)....................22, 23

*Cuoco v. Moritsugu*,
222 F.3d 99 (2d Cir. 2000)....................22

*Diedrich v. Wolters Kluwer*,
2024 WL 291156 (S.D.N.Y. Jan. 25, 2024) ....................10

*Dish Network LLC v. Fun Dish, Inc.*,
2015 WL 12733392 (N.D. Ohio Aug. 12, 2015)....................15

*Eminah Props. LLC v. Energizer Holdings, Inc.*,
531 F. Supp. 3d 593 (E.D.N.Y. 2021) ....................15, 20

*Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*,
194 F. Supp. 3d 263 (S.D.N.Y. 2016)....................15, 19, 20

*Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*,
822 F.3d 620 (2d Cir. 2016)....................8

*Firth v. New York*,
98 N.Y.2d 365 (2002) ....................16

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974)....................21

*Ghartey v. St. John's Queens Hosp.*,
869 F.2d 160 (2d Cir. 1989)....................9

*GM Photo, LLC v. Focus Camera, Inc.*,
2025 WL 1226629 (S.D.N.Y. Apr. 24, 2025)....................16

*Greer v. Fox Corp.*,
2022 WL 4093155 (S.D.N.Y. Sept. 7, 2022)....................18

*Gregor v. Rice Drilling D, LLC*,
2024 WL 169119 (S.D. Ohio Jan. 16, 2024) ....................15

*Hamilton Ins. Serv., Inc. v. Nationwide Ins. Co.*,
714 N.E.2d 898 (Ohio 1999) ....................11

*Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*,
270 F. Supp. 3d 716 (S.D.N.Y. 2017)....................10, 11

*Hounshell v. Am. States Ins. Co.*,
424 N.E.2d 311 (Ohio 1981) ....................10

*In Touch Concepts, Inc. v. Cellco P'ship*,
788 F.3d 98 (2d Cir. 2015)....................12

*In Touch Concepts, Inc. v. Cellco P'ship*,
949 F. Supp. 2d 447 (S.D.N.Y. 2013).....12

*Inc. Vill. of Saltaire v. Zagata*,
720 N.Y.S.2d 200 (N.Y. App. Div. 2001).....10

*John J. Kassner & Co. v. City of New York*,
389 N.E.2d 99 (N.Y. 1979).....9

*Kitani v. New York City Transit*,
2022 WL 874781 (S.D.N.Y. Mar. 24, 2022).....21

*LaFarge Corp. v. Travelers Indem. Co.*,
118 F.3d 1511 (11th Cir. 1997).....8

*Lucarell v. Nationwide Mut. Ins. Co.*,
97 N.E.3d 458 (Ohio 2018).....9, 11

*Lucente v. Int'l Bus. Machs. Corp.*,
310 F.3d 243 (2d Cir. 2002).....22

*Lundy v. Cath. Health Sys. of Long Island, Inc.*,
711 F.3d 106 (2d Cir. 2013).....6

*M/A-COM Sec. Corp. v. Galesi*,
904 F.2d 134 (2d Cir. 1990).....11

*Masson v. New Yorker Mag., Inc.*,
501 U.S. 496 (1991).....21

*McGrath v. Nationwide Mut. Ins. Co.*,
295 F. Supp. 3d 796 (S.D. Ohio 2018).....11

*Midwestern Indem. Co. v. Luft & Assocs. Ins. Agency, Inc.*,
No. 87AP-541, 1987 WL 31285 (Ohio Ct. App. Dec. 23, 1987).....13

*Murphy v. Am. Home Prods. Corp.*,
58 N.Y.2d 293 (1983).....9, 11, 12

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964).....21

*Nw. Fin. Agency, Inc. v. Transamerica Occidental Life Ins. Co.*,
773 F. Supp. 75 (S.D. Ohio 1991).....13

*Pampillonia v. RJR Nabisco, Inc.*,
138 F.3d 459 (2d Cir. 1998).....7

*Parker v. BJ's Wholesale Club, Inc.*,
2015 WL 1247066 (E.D.N.Y. Mar. 18, 2015).....12

*Pasternack v. Lab'y Corp. of Am.*,
2014 WL 4832299 (S.D.N.Y. Sept. 29, 2014), *aff'd*, 839 F.3d 151 (2d Cir. 2016).....19

*Paul v. State Farm Mut. Auto. Ins. Co.*,
2014 WL 1116979 (N.D. Ohio Mar. 19, 2014).....14

*Plumbing Supply, LLC v. ExxonMobil Oil Corp.*,
2016 WL 1249611 (S.D.N.Y. Mar. 29, 2016) ....14

*Quamme v. Lancaster-Fairfield Cmty. Hosp.*,
1995 WL 156276 (Ohio Ct. App. Feb. 27, 1995) ....18

*Schiavone Constr. Co. v. Time, Inc.*,
619 F. Supp. 684 (D.N.J. 1985) ....22

*Schwartz v. Fortune Magazine*,
89 F. Supp. 2d 429 (S.D.N.Y. 1999)....13

*Shak v. Krum*,
2018 WL 5831319 (S.D.N.Y. Nov. 6, 2018) ....18

*Siegel v. HSBC N. Am. Holdings, Inc.*,
933 F.3d 217 (2d Cir. 2019)....6

*Smith v. New York State*,
2019 WL 2097816 (N.D.N.Y. May 14, 2019) ....15

*Soter Techs., LLC v. IP Video Corp.*,
523 F. Supp. 3d 389 (S.D.N.Y. 2021)....20

*Se. Floating Docks, Inc. v. Auto-Owners Ins. Co.*,
82 So. 3d 73 (Fla. 2012)....8

*State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*,
374 F.3d 158 (2d Cir. 2004)....13, 14

*T.S. v. Plain Dealer*,
954 N.E.2d 213 (Ohio Ct. App. 2011) ....16

*Trump Media & Tech. Grp. Corp. v. WP Co.*,
720 F. Supp. 3d 1203 (M.D. Fla. 2024) ....22

*Trump v. Dow Jones & Co.*,
2026 WL 979572 (S.D. Fla. Apr. 13, 2026) ....21

*Turtur v. Rothschild Registry Int'l, Inc.*,
26 F.3d 304 (2d Cir. 1994)....8

*United States v. Quintieri*,
306 F.3d 1217 (2d Cir. 2002)....6

*Webb v. Chase Manhattan Mortgage Corp.*,
2008 WL 2230696 (S.D. Ohio May 28, 2008) ....14

*Welsbach Elec. Corp. v. MasTec N. Am., Inc.*,
859 N.E.2d 498 (N.Y. 2006)....8

*White Mule Co. v. ATC Leasing Co.*,
540 F. Supp. 2d 869 (N.D. Ohio 2008)....15, 17

**STATUTES**

Fla. Stat. § 501.212(4)....6

Ohio Rev. Code § 2305.11(A) ....................16

**RULES**

Fed. R. Civ. P. 9(g) ....................20
Fed. R. Civ. P. 12(b)(6) ....................1, 2, 22
N.Y. C.P.L.R. § 201 ....................9
N.Y. C.P.L.R. § 215(3) ....................16

JPMorgan Chase Bank, N.A. ("JPMorgan" or the "Bank") and James Dimon (together, "Defendants") respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

President Donald J. Trump and several corporate entities controlled by his family seek more than $5 billion because their bank accounts were closed in 2021. Now, nearly five years later, Plaintiffs allege that JPMorgan closed their accounts for political reasons and placed them on an unspecified "blacklist" that induced other banks to not deal with them. Those allegations are false—indeed, one of President Trump's personal accounts with JPMorgan remains open to this day, and several Plaintiffs subsequently opened new accounts with JPMorgan, along with several affiliates. Moreover, as far as Defendants can tell, no "blacklist" matching the Complaint's description exists, which is why Plaintiffs cannot identify one. However, at this stage, the Court need not weigh the veracity of Plaintiffs' allegations, nor accept Plaintiffs' invitation to engage in a policy debate on access to banking. Under well-settled law, even treating Plaintiffs' allegations as true, those allegations fail to state any claim cognizable at law. The Complaint should be dismissed, in its entirety, with prejudice.

Plaintiffs' sole claim against JPMorgan's CEO has already been found legally deficient. Plaintiffs assert that Mr. Dimon violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). But in denying Plaintiffs' Motion to Remand, Judge Williams held that "Mr. Dimon was fraudulently joined in this action" and Plaintiffs have no possibility of stating this claim against him. Dkt. 36 at 8. That ruling is the law of the case and requires his dismissal from this action.

Against JPMorgan, Plaintiffs assert claims for breach of the implied covenant of good faith and fair dealing and trade libel. As for the first, Plaintiffs acknowledge that the account agreements

they signed expressly allowed the Bank to close their accounts for any reason (or no reason at all). So, they cannot (and do not) claim any breach of the express terms of those agreements. Instead, Plaintiffs claim JPMorgan breached an implied contract term, but settled law dictates that an implied contract term may not countermand a contract's express terms. This contract claim was also filed nearly three years too late.

Plaintiffs' "trade libel" claim is likewise time-barred. Moreover, it is insufficiently pled. Plaintiffs' allegations regarding the alleged "blacklist" are so bare that it is impossible to determine what JPMorgan allegedly stated, when, or to whom. Plaintiffs also fail to allege key elements of their "trade libel" claim and do not plead a basis for any damage that is recognized in the law.

The Court should dismiss Plaintiffs' suit in its entirety with prejudice under Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND

As of early 2021, each Plaintiff maintained one or more deposit accounts with JPMorgan. *See* Complaint ¶¶ 22, 45, Dkt. 1-2 (hereinafter "Compl."). To open or use those accounts, Plaintiffs agreed to certain terms and conditions. For the corporate Plaintiffs—the nine entities controlled by the Trump family that, together with President Trump, are named as Plaintiffs—each account agreement contained the following provisions relevant to this motion:

- **Two-Year Statute of Limitations:** Any claim in connection with the account "must be brought against the Bank within two (2) years of the occurrence of the event giving rise to the claim." Declaration of Dan Wilkening, Dkt. 15-1 ("Decl.") ¶ 11(d); *see id.* ¶¶ 13(e), 15(e), 17(d), 18(c), 19(g).[1]
- **No Consequential Damages:** JPMorgan and its officers or employees "shall not … be liable for indirect, special, consequential or punitive loss or damage of any

[1] For the Court's convenience, citations to the governing account terms refer to the verbatim excerpts in the Wilkening Declaration. The full terms appear at Attachments 2 through 11 to that Declaration.

kind," including "loss of goodwill." Decl. ¶ 11(a); *see id.* ¶¶ 13(b), 15(b), 17(b), 18(a), 19(b).

- **<u>At-Will Account Closure:</u>** Either JPMorgan or the customer may close the account at their discretion. Some contracts require "thirty (30) calendar days' prior written notice" before closure; the rest allow closure "without notice." Decl. ¶¶ 11(b), 17(c); *see id.* ¶¶ 13(c), 15(c), 18(b), 19(e).

- **<u>Choice of Law:</u>** Either New York or Ohio law governs all disputes pertaining to the agreement. Decl. ¶¶ 12(a), 14(a) ("shall be governed by and construed in accordance with the laws of the State of New York"), 17(f), 18(f) ("shall be governed by the laws of the state of New York (without reference to the conflict of law rules thereof), except that any disputes arising from or related to an account opened and maintained in a state or jurisdiction other than New York shall be governed by the laws of that state or jurisdiction"),[2] 16(a), 19(c) ("shall be governed by and construed in accordance with the laws of the State of Ohio").

President Trump's account likewise allowed for account termination at any time, waived special damages, and selected New York law to govern all disputes. Decl. ¶ 26(a), (b), (e), (h). In the order transferring this case from the Southern District of Florida, Judge Williams held that these contracts govern the parties' relationships. Dkt. 36 at 9.

Ignoring these agreements, the Complaint incorrectly asserts that the parties' relationships were governed by a November 2025 version of Chase's Deposit Account Agreement ("DAA"). Compl. ¶ 111; *id.* Ex. A. The DAA, however, governs only retail accounts—which none of Plaintiffs' accounts were. Decl. ¶ 34; *see* Compl. Ex. A at 1 (noting that the contract applies to Chase personal, business, and private-client accounts). Moreover, Plaintiffs' Complaint cites the 2025 version of the DAA, even though they allege that their accounts were closed in 2021. *Compare* Compl. ¶ 45, *with id.* Ex. A. Nevertheless, the DAA that Plaintiffs attach has comparable terms to the governing agreements, including a two-year limitations period, a waiver of special

---

[2] As detailed in Paragraph 20 of the Wilkening Declaration, each Plaintiff to whom these account terms apply maintained their JPMorgan accounts in New York.

damages, a provision allowing either party to close an account for any reason, and a choice-of-law clause:

- **Two-Year Statute of Limitations:** "You must file any lawsuit or arbitration against us within two years after the cause of action arises, unless federal or state law or an applicable agreement provides for a shorter time. This limit is in addition to limits on notice as a condition to making a claim. If applicable state law does not permit contractual shortening of the time during which a lawsuit must be filed to a period as short as two years, you and we agree to the shortest permitted time under that state's laws." Compl. Ex. A at 26.

- **No Consequential Damages:** "We will not be liable for indirect, special, or consequential damages regardless of the form of action and even if we have been advised of the possibility of such damages." Compl. Ex. A at 23 (emphasis omitted).

- **At-Will Account Closure:** "Either you or we may close your account at any time for any reason or no reason without prior notice." Compl. ¶ 111 (quoting Compl. Ex. A at 23).

- **Choice of Law:** "This agreement, all accounts and services provided to you, and any dispute relating to those accounts and services are governed by federal law and, when not superseded by federal law, the law of the state where your account is located." Compl. Ex. A at 23.

The Complaint alleges that, as permitted by the parties' contracts, JPMorgan notified Plaintiffs on February 19, 2021 that it was initiating the process of ending its relationship with Plaintiffs. Compl. ¶ 45. As the Complaint concedes, that communication provided 60 days' notice before closure—double that required by the governing contracts. *Compare* Compl. ¶ 47, *with* Decl. ¶¶ 11(b), 13(c), 15(c), 17(c), 18(b), 19(e), *and* Compl. ¶ 111. Plaintiffs allege that the accounts at issue were ultimately closed on April 19, 2021. Compl. ¶ 45.

On January 22, 2026, nearly five years after they allege their accounts were closed, Plaintiffs filed this action in the Eleventh Judicial Circuit of Florida. Compl. at 1, 26. Plaintiffs assert that JPMorgan breached the implied covenant of good faith and fair dealing by closing Plaintiffs' accounts and assert a declaratory judgment claim based on the same allegations. Compl. ¶¶ 102–03, 116. Plaintiffs also assert a trade libel claim against JPMorgan, alleging that the Bank

published Plaintiffs' names to a "blacklist" of malfeasant banking customers. Compl. ¶¶ 87–88. Plaintiffs assert a single claim against Mr. Dimon, under FDUTPA, based on the same "blacklist" allegations. Compl. ¶ 96. Plaintiffs also demand $5 billion—an amount untethered to any of the Complaint's factual allegations. Compl. at 26.

Defendants timely removed the action to the U.S. District Court for the Southern District of Florida. Dkt. 1. Defendants' notice of removal asserted that the Southern District of Florida had subject-matter jurisdiction because Plaintiffs had fraudulently joined Mr. Dimon, the sole non-diverse defendant, to this action and had no possibility of successfully maintaining a FDUTPA claim against him. *Id.* at 3–16. After removing, Defendants moved to transfer this case to the Southern District of New York pursuant to the governing contracts' forum-selection clauses. Dkt. 15 at 7–10. Plaintiffs opposed transfer and moved to remand the case to Florida state court. Dkt. 31; Dkt. 32.

On September 30, 2026, Judge Williams of the Southern District of Florida denied Plaintiffs' motion to remand and transferred the case to this Court. Dkt. 36. Judge Williams held that "Mr. Dimon is exempt from FDUTPA liability pursuant to Florida Statutes section 501.212, and there is no possibility that Plaintiffs can establish a FDUTPA claim against him." Dkt. 36 at 8. As a result, "removal by Defendants was proper because Mr. Dimon was fraudulently joined." *Id.* Further, relying on the Wilkening Declaration, the court held that "[e]ach of Plaintiffs' accounts were governed by contractual agreements that delegated exclusive jurisdiction to New York" and transferred the case to this Court. *Id.* at 9.

Defendants now move to dismiss. This motion is timely under the Southern District of Florida's order providing that "Defendants shall have two weeks from the Court's order on the pending Motion to Transfer to answer or otherwise respond to Plaintiffs' Complaint." Dkt. 26.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must plead sufficient facts to state a claim that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court accepts factual allegations as true and draws reasonable inferences in Plaintiffs' favor, those allegations must be more than mere speculation. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court need not accept conclusory allegations or legal conclusions as true. *See Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 222 (2d Cir. 2019). And mere conclusory allegations fail to meet the plausibility standard. *See Lundy v. Cath. Health Sys. of Long Island, Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). Moreover, where a pleading conflicts with attached exhibits or extrinsic exhibits that are integral to the pleading, the exhibits govern and the allegations are not accepted as true. *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (per curiam).

## ARGUMENT

### I. Because Mr. Dimon Was Fraudulently Joined, He Must Be Dismissed From This Action (Count II)

The sole claim against JPMorgan's CEO must be dismissed.

In denying Plaintiffs' Motion to Remand, Judge Williams held that Plaintiffs have "no possibility" of prevailing on their FDUTPA claim against Mr. Dimon, and thus "Mr. Dimon was fraudulently joined in this action." Dkt. 36 at 8. Specifically, Judge Williams found that FDUTPA expressly precludes any liability for Mr. Dimon because he is a "person regulated" by federal banking laws and so carved out by Fla. Stat. § 501.212(4). *Id.* That fraudulent-joinder ruling is now law of the case. *See, e.g.*, *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002).[3]

[3] The law-of-the-case doctrine "applies as much to the decisions of a coordinate court in the same case as to a court's own decisions," given the need to avoid the "vicious circle of

A ruling that a defendant was fraudulently joined entails that "there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court," requiring dismissal with prejudice under Rule 12(b)(6). *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). Thus, because Mr. Dimon was fraudulently joined, he must be dismissed from this action. *See id.* at 461–62.

## II. Plaintiffs' Claims Against JPMorgan Fail for Multiple Reasons (Counts I, III & IV)

Plaintiffs' claims against JPMorgan fail for several reasons. Under both New York and Ohio law, which govern Plaintiffs' claims pursuant to the choice-of-law provisions in their account agreements, the corporate Plaintiffs' implied-covenant and declaratory-judgment claims, which accrued nearly five years ago, are time-barred under the two-year contractual limitation period.[4] Even if they were timely, those claims fail as to all Plaintiffs because a party cannot breach an implied covenant by exercising rights expressly granted by contract—here, the parties' agreements authorized JPMorgan to close Plaintiffs' accounts for any reason. Plaintiffs' trade libel claim likewise fails: it is barred by the applicable one-year statute of limitations; it fails to allege the requisite facts; it does not concern Plaintiffs' goods or services; it fails to plead special damages with particularity; and it does not plausibly allege actual malice, as required given Plaintiffs' status as public figures. Plaintiffs' claims against JPMorgan should therefore be dismissed with prejudice.

### A. New York and Ohio law apply to Plaintiffs' claims.

As an initial matter, either New York or Ohio law applies to all of Plaintiffs' claims against JPMorgan because each Plaintiff's operative agreement with the Bank selects New York or Ohio

litigation" that could result from transferee courts revisiting the rulings of transferor courts. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).

[4] President Trump's account terms did not include a two-year limitation period.

law. *See Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 309–10 (2d Cir. 1994) (contractual choice-of-law provision applies to related tort claims). Under New York's choice of law rules, which determine the enforceability of these provisions, contractual selections of governing law are valid and enforceable.[5] *See Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 859 N.E.2d 498, 499 (N.Y. 2006); *Ayres v. Teleios LS Holdings DE, LLC*, 2026 WL 450701, at *6 (S.D.N.Y. Feb. 17, 2026) (Broderick, J.) ("Generally, New York courts will enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction." (quoting *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 641 (2d Cir. 2016))). Eight of the governing agreements select New York law; the other two select Ohio. *See* Decl. ¶¶ 12(a); 14(a); 16(a); 17(f); 18(f); 19(c); 26(b). And even if the retail DAA attached to Plaintiffs' Complaint applied (it does not), each Plaintiff would still be subject to New York law because their accounts were located in New York. *See* Compl. Ex. A at 23; Decl. ¶¶ 20, 21, 27. New York or Ohio law thus governs all of Plaintiffs' claims against JPMorgan.

### B. Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing and for declaratory relief must be dismissed (Counts III and IV).

Under both New York and Ohio law, Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing (Count IV) and for declaratory relief (Count III) must be dismissed. First, most are time-barred under the two-year limitation period in the parties' contracts. Second, they fail on the merits as a matter of law. Courts applying both New York and Ohio law routinely "reject[] the contention that a party breaches the implied duty of good faith and fair dealing merely

---

[5] "[W]hen a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 64 (2013). In any event, the rule under Florida law is the same. *See LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997) (per curiam); *Se. Floating Docks, Inc. v. Auto-Owners Ins. Co.*, 82 So. 3d 73, 80 (Fla. 2012).

by … acting as permitted by [a contract's] express terms," *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 464 (Ohio 2018); *see also Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304–05 (1983). That is all Plaintiffs allege JPMorgan did here: close their accounts "for any reason." Compl. ¶ 112.

**1. The corporate Plaintiffs' claims are time-barred.**

Under the operative agreements (as well as the DAA incorrectly attached to the Complaint), the corporate Plaintiffs were required to initiate any claim against JPMorgan related to the parties' relationship within two years of accrual. *See* Decl. ¶¶ 11(d); 13(e); 15(e); 17(d); 18(c); 19(g); *see also* Compl. Ex. A at 26. Yet Plaintiffs waited nearly five years to sue: Plaintiffs claim their accounts were closed on April 19, 2021, but they did not file this Complaint until January 22, 2026—almost three years late. Compl. ¶ 45; *id.* at 26. Their contract claim is thus time-barred and must be dismissed. *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss.").

Plaintiffs cannot reasonably dispute that the account agreements' limitation period applies. Under both New York and Ohio law, "an agreement which modifies the Statute of Limitations by specifying a shorter, but reasonable, period within which to commence an action is enforceable." *John J. Kassner & Co. v. City of New York*, 389 N.E.2d 99, 103 (N.Y. 1979); *see Angel v. Reed*, 891 N.E.2d 1179, 1181 (Ohio 2008) ("[P]arties to a contract may validly limit the time for bringing an action on a contract ... as long as the shorter period is a reasonable one.").[6]

[6] New York law expressly contemplates shortened limitations periods. *See* N.Y. C.P.L.R. § 201 ("An action ... must be commenced within the time specified in this article unless ... a shorter time is prescribed by written agreement.").

Indeed, the parties' two-year limitation period is reasonable. Far shorter limitation periods have been upheld when "voluntarily agreed to" and not procured by "duress, fraud, or misrepresentation." *Inc. Vill. of Saltaire v. Zagata*, 720 N.Y.S.2d 200, 201 (N.Y. App. Div. 2001); *see id.* ("90-day period of limitations" was "freely agreed to" and therefore enforceable); *Hounshell v. Am. States Ins. Co.*, 424 N.E.2d 311, 313 (Ohio 1981) ("[A] limitation on periods for the commencement of actions to a period of 12 months is not unreasonable."); *see also Diedrich v. Wolters Kluwer*, 2024 WL 291156, at *3 (S.D.N.Y. Jan. 25, 2024) (Broderick, J.) (finding one-year contractual limitations period reasonable under New York and Illinois law). The corporate Plaintiffs voluntarily agreed to the limitation periods in the governing agreements.

Even the 2025 DAA that Plaintiffs attached to the Complaint contains the same limitation period. *See* Compl. Ex. A at 26. Plaintiffs plead that "Plaintiffs and JPMC entered into" that DAA and that the DAA "governed the parties' relationship." Compl. ¶ 101. As such, according to Plaintiffs' own Complaint, the parties "voluntarily agreed to" a two-year limitation period, and that period is enforceable. *Zagata*, 720 N.Y.S.2d at 201. The implied covenant and declaratory judgment claims are thus untimely and must be dismissed.

**2. Plaintiffs fail to plead a predicate breach of contract required to show a breach of the implied covenant of good faith and fair dealing.**

All Plaintiffs' implied covenant and declaratory judgment claims also fail because they ask the Court to impose limits on JPMorgan's rights that contravene the parties' agreements. The law is clear: no such limits are permitted where, as here, the contract provides an express and unqualified right for either party to terminate the relationship.

As a threshold matter, neither New York nor Ohio recognizes a standalone claim for breach of an implied covenant; the claim must rest on a breach of the (actual) contract. *See Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, 270 F. Supp. 3d 716, 732 (S.D.N.Y. 2017);

*McGrath v. Nationwide Mut. Ins. Co.*, 295 F. Supp. 3d 796, 808 (S.D. Ohio 2018). To rise to that level, an alleged "implied covenant" must be "so interwoven in the whole writing of a contract as to be necessary for effectuation of the purposes of the contract." *Highland CDO*, 270 F. Supp. 3d at 732 (quoting *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990)). Here, by contrast, Plaintiffs allege an implied covenant that would directly conflict with the parties' express contractual right to close the accounts at any time. *See Murphy*, 58 N.Y.2d at 304–05 ("No obligation can be implied … which would be inconsistent with other terms of the contractual relationship."); *Lucarell*, 97 N.E.3d at 462 ("a party to a contract does not breach the implied duty of good faith and fair dealing by seeking to enforce the agreement as written or by acting in accordance with its express terms"). If the contract addresses an issue, New York and Ohio law preclude a plaintiff from claiming an implied term countermands the agreement's text. *See Hamilton Ins. Serv., Inc. v. Nationwide Ins. Co.*, 714 N.E.2d 898, 901 (Ohio 1999); *Murphy*, 58 N.Y.2d at 304–05.

The plain text of each governing contract between the parties, as well as the DAA, allowed the Bank to close Plaintiffs' accounts at JPMorgan's discretion. Several of the governing agreements expressly allowed either the customer or JPMorgan to close an account for any reason with no less than 30 days' written notice. *See, e.g.*, Decl. ¶ 11(b). Others allowed the customer or JPMorgan to close the account for any reason and with no notice at all. *See, e.g.*, Decl. ¶ 17(c). Indeed, Plaintiffs themselves allege that, in the agreement they say "governed the parties' relationship"—the DAA—"JPMC reserved the right to terminate any existing banking relationship *at any time and for any reason*." Compl. ¶ 112 (emphasis added).

Pursuant to these express provisions, JPMorgan had an "absolute, unqualified right" to close Plaintiffs' accounts "without court inquiry into whether the termination was activated by an

ulterior motive." *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 470 (S.D.N.Y. 2013). "[T]he implied covenant arises only in connection with the rights or obligations set forth in the terms of the contract, and cannot create duties that negate explicit rights under a contract." *Burton v. Label, LLC*, 344 F. Supp. 3d 680, 697 (S.D.N.Y. 2018) (Broderick, J.) (cleaned up) (applying New York law). Because the parties contracted for "an unfettered right to terminate" the relationship, "to imply … a limitation [on] the existence of an unrestricted right would be internally inconsistent." *Murphy*, 58 N.Y.2d at 297–98, 304–05 (declining to imply such a limitation in an at-will employment contract). The Second Circuit has applied that reasoning to the termination of a commercial relationship. *See In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 102 (2d Cir. 2015) (holding, in reliance on *Murphy*, that "the implied covenant of good faith and fair dealing cannot be used to impose an obligation that is inconsistent with express contractual terms"). Courts "may not limit contractual discretion where limitations are not supported by the express contractual language." *In Touch Concepts*, 949 F. Supp. 2d at 472. Taking all of Plaintiffs' allegations as true, the alleged account closures were authorized by the express terms of the governing agreements.

Plaintiffs' allegation that JPMorgan closed their accounts "as a result of political discrimination" does not change this analysis. Compl. ¶ 49. Even accepting Plaintiffs' false allegations for this motion's purposes, they still fail as a matter of law because the account terms grant both parties unqualified authority to close the accounts at will. In the at-will employment context—where an employment relationship lacks a fixed duration and so is presumed to be terminable at any time—there is no implied contractual duty not to discriminate, so courts have consistently refused to allow plaintiffs to "rehash … discrimination claims through an additional cause of action for breach of contract." *Parker v. BJ's Wholesale Club, Inc.*, 2015 WL 1247066, at *5 (E.D.N.Y. Mar. 18, 2015); *Benson v. N. Shore-Long Island Jewish Health Sys.*, 482 F. Supp.

2d 320, 331 (E.D.N.Y. 2007) ("Although it is unlawful for an employer to terminate an employee for discriminatory reasons, the proper remedy for a person aggrieved in this manner is not a cause of action for breach of contract."). That result follows even more readily here: if the implicit at-will nature of an employment relationship is enough to negate any implied duty not to discriminate, the explicit provisions allowing account closure at any time and for any reason all the more clearly foreclose an implied duty to the contrary.

Instead, where a contract gives either party an unqualified right to end the relationship, "[a] remedy for [alleged discrimination] must be pursued under legal theories other than ordinary contract principles," such as anti-discrimination statutes. *Benson*, 482 F. Supp. 2d at 331. Plaintiffs have not done that here. Their claim for breach of their account agreements is a nonstarter because "the court does not inquire into why a party exercised his right to terminate a contract when the contract is terminable without cause." *Schwartz v. Fortune Magazine*, 89 F. Supp. 2d 429, 434 (S.D.N.Y. 1999); *see also, e.g.*, *Nw. Fin. Agency, Inc. v. Transamerica Occidental Life Ins. Co.*, 773 F. Supp. 75, 80 (S.D. Ohio 1991) ("The case law in Ohio supports the proposition that, where termination of a contract may be done by either party for any reason whatsoever, there will be no inquiry into the motive for termination as it is irrelevant." (quoting *Midwestern Indem. Co. v. Luft & Assocs. Ins. Agency, Inc.*, No. 87AP-541, 1987 WL 31285, at *2 (Ohio Ct. App. Dec. 23, 1987))).

These principles of contract interpretation apply equally to banking relationships. In *State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 170 (2d Cir. 2004), for example, the Second Circuit affirmed the dismissal of an implied covenant claim against a bank on the grounds that "[w]here a contract allows a bank to withhold consent for particular conduct and sets no express restrictions on the bank's right to do so, the bank is not prohibited from

unreasonably or arbitrarily withholding such consent." *Id.* Likewise, in *Webb v. Chase Manhattan Mortgage Corp.*, 2008 WL 2230696 (S.D. Ohio May 28, 2008), the court, applying Ohio law, rejected a customer's attempt to wield the "covenant of good faith and fair dealing" to imply terms "that would contradict the … express contract provisions." *Id.* at *23.

Accordingly, because the express contractual language unambiguously granted JPMorgan the right to close accounts at will, and because neither New York nor Ohio law permits an implied covenant to override such clear contractual terms, Plaintiffs' implied-covenant and declaratory judgment claims fail as a matter of law. Recharacterizing Plaintiffs' grievance as one involving political discrimination cannot transform a contractually authorized exercise of discretion into a cognizable breach of an implied contractual term. The Court should dismiss Plaintiffs' implied-covenant and declaratory judgment claims for this additional reason.

**3. Because Plaintiffs have failed to state a breach of contract claim, their parallel claim for declaratory relief (Count III) also must be dismissed.**

Plaintiffs base their request for declaratory relief (Count III) solely on the alleged breach of contract. *See* Compl. ¶ 103 (requesting a declaration as to "whether JPMC's Agreement allows termination of an existing banking relationship based on political discrimination"). Because "the Complaint does not allege a plausible breach of contract claim, the Court is, by extension, left without a basis to award declaratory relief." *Atlanticare Mgmt., LLC v. Scottsdale Ins. Co.*, 2025 WL 1532433, at *4 (S.D.N.Y. May 29, 2025); *see Paul v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 1116979, at *6 (N.D. Ohio Mar. 19, 2014) ("A plaintiff cannot adequately allege a claim for declaratory relief where, as here, a viable breach of contract has not been alleged."). In any event, as discussed above, Plaintiffs' contract claim is untimely under the parties' contractual limitations period, and Plaintiffs "cannot reanimate a time-barred claim by styling it as a claim for declaratory judgment." *Plumbing Supply, LLC v. ExxonMobil Oil Corp.*, 2016 WL 1249611, at *11 n.6

(S.D.N.Y. Mar. 29, 2016). Finally, Plaintiffs allege that the accounts at issue in this lawsuit have been closed for years, and they do not seek the reopening of their accounts or any other prospective action from JPMorgan with respect to their accounts, so there is no live controversy regarding the parties' future rights with respect to those accounts that could justify declaratory relief. *See Smith v. New York State*, 2019 WL 2097816, at *4–5 (N.D.N.Y. May 14, 2019) (citation omitted); *Gregor v. Rice Drilling D, LLC*, 2024 WL 169119, at *4 (S.D. Ohio Jan. 16, 2024). Plaintiffs' claim for a declaratory judgment should be dismissed.

**C. Plaintiffs fail to state a trade libel claim (Count I).**

Plaintiffs' claim against JPMorgan for trade libel also fails.[7] To state a claim for trade libel under New York law, a plaintiff must adequately plead: "(1) falsity of the statement, (2) publication to a third person, (3) malice (express or implied), and (4) proven special damages." *Angio-Med. Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 274 (S.D.N.Y. 1989). Moreover, "trade libel is based on statements confined to denigrating the quality of a business' services or products." *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 291 (S.D.N.Y. 2016) (cleaned up). Similarly, Ohio law requires a false representation of fact that disparages the quality of goods, services, or business of another in the course of their vocation or occupation, *White Mule Co. v. ATC Leasing Co.*, 540 F. Supp. 2d 869, 894–95 (N.D. Ohio 2008), as well as injury to the plaintiff, *see Dish Network LLC v. Fun Dish, Inc.*, 2015 WL 12733392, at *3 (N.D. Ohio Aug. 12, 2015).

[7] New York and Ohio have subsumed common-law trade libel within their causes of action for product disparagement. *See Eminah Props. LLC v. Energizer Holdings, Inc.*, 531 F. Supp. 3d 593, 608 (E.D.N.Y. 2021); *Accelerated Moving & Storage v. Herc Rentals, Inc.*, 2022 WL 3907764, at *4 (Ohio Ct. App. Aug. 20, 2022). Defendants have adopted Plaintiffs' nomenclature in this motion for ease of reference.

Plaintiffs fail to state a trade libel claim for five independent reasons. First, this claim, too, is untimely. Second, Plaintiffs fail to sufficiently allege the "what," "when," and "to whom" of JPMorgan's supposed libel. Third, they also fail to plead that the alleged statements concerned goods or services. Fourth, Plaintiffs fail to plead the requisite "special damages" that trade libel is limited to remedying—and, in any event, Plaintiffs' agreements waive such damages. Fifth, independent of these other pleading failures, Plaintiffs cannot establish that JPMorgan acted with "actual malice," as required to state a libel claim involving public figures.

**1. Plaintiffs' trade libel claim is barred by the statute of limitations.**

Both New York and Ohio apply a one-year statute of limitations for trade libel claims. *See* N.Y. C.P.L.R. § 215(3); Ohio Rev. Code § 2305.11(A). Here, the Complaint alleges that, as a result of the purported "blacklisting," "Plaintiffs have suffered significantly limited access to wealth management products, business banking, and other services *for years*." Compl. ¶ 56 (emphasis added). Plaintiffs thus allege that any "blacklisting" necessarily occurred more than one year ago, leaving their trade libel claim barred under the one-year limitations period. *See Firth v. New York*, 98 N.Y.2d 365, 369 (2002) (statute of limitations for trade libel claim "runs from the date of … publication"); *T.S. v. Plain Dealer*, 954 N.E.2d 213, 216 (Ohio Ct. App. 2011) ("the initial date of publication triggers the statute of limitations for causes of action based on allegedly defamatory materials").

**2. Plaintiffs allege insufficient facts to state a trade libel claim.**

Even if Plaintiffs' trade libel claim were timely, Plaintiffs fail to allege sufficient facts to survive a motion to dismiss. At a bare minimum, a "complaint must at least identify the allegedly defamatory statements, … the time when the statements were made, and the third parties to whom the statements were published." *Banks v. Cnty. of Westchester*, 168 F. Supp. 3d 682, 697 (S.D.N.Y. 2016) (internal quotation marks omitted); *see also GM Photo, LLC v. Focus Camera, Inc.*, 2025

WL 1226629, at *5 (S.D.N.Y. Apr. 24, 2025) (Broderick, J.) ("To state a defamation claim, the complaint must adequately identify the purported communication and indicate who made the communication, when it was made, and to whom it was communicated." (cleaned up)). Plaintiffs' Complaint does not contain these required details.

Plaintiffs nowhere allege *what* JPMorgan actually wrote or said about them. The Complaint alleges only that Plaintiffs' names appeared on a "blacklist"; it fails to identify any specific statement—much less a false one—that JPMorgan made about Plaintiffs. Without knowing what was allegedly said, the Court cannot assess whether it is defamatory, whether it is fact or opinion, or whether any privilege applies. *See Alvarado v. Mt. Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 791 (S.D.N.Y. 2019) (dismissing where Plaintiff "failed to plead the particular words complained of"); *White Mule*, 540 F. Supp. 2d at 895 (courts assessing whether an alleged libel is a statement of fact under Ohio law need to examine "the specific language used in the assertion" (citation omitted)).[8]

Plaintiffs also do not sufficiently claim *when* the statements were made, alleging only that the "blacklisting" occurred more than one year ago. Plaintiffs' failure to include any specific allegations of when Plaintiffs were placed on the blacklist is fatal to their claim. *See Alvarado*, 404 F. Supp. 3d at 790 ("Plaintiff has failed to sufficiently plead, even under the lenient federal standard, the requisite time that the statement was made.").

[8] Plaintiffs' filings highlight this deficiency. In their Opposition to Defendants' Motion to Transfer, Plaintiffs argued that their trade libel claim is not even related to the parties' account relationships, Dkt. 32 at 7—despite the Complaint's allegation that Plaintiffs were placed on the alleged blacklist "as related to wealth management accounts that they have title to," Compl. ¶ 85. Plaintiffs' shifting account of any allegedly defamatory statement underscores how far they are from pleading a statement with the particularity needed to survive dismissal.

Last, Plaintiffs have not alleged *to whom* the "blacklist" was published. Plaintiffs generally allege that other federally regulated banks could "access" the blacklist and that "upon information and belief," their inclusion on the list induced other banks not to deal with them. Compl. ¶ 58. But they have not alleged which banks received or reviewed the blacklist, nor, most critically, which refused to deal with them because of their inclusion on the supposed list—a fact that would be entirely within their knowledge. New York and Ohio law require plaintiffs to identify the specific recipients of a defamatory publication in their pleading and the basis for their knowledge of the publication. *See, e.g.*, *Greer v. Fox Corp.*, 2022 WL 4093155, at *7 (S.D.N.Y. Sept. 7, 2022); *Shak v. Krum*, 2018 WL 5831319, at *4 (S.D.N.Y. Nov. 6, 2018) (collecting cases); *see also Quamme v. Lancaster-Fairfield Cmty. Hosp.*, 1995 WL 156276, at *2 (Ohio Ct. App. Feb. 27, 1995) ("The plaintiff must also allege publication of the statement to an identifiable third party"). Because Plaintiffs have failed to plead even the basic *what*, *when*, and *to whom* of the supposed blacklist, they have not stated a plausible trade libel claim.

**3. Plaintiffs' trade libel claim does not concern goods or services.**

Under New York and Ohio law, trade libel applies only to false statements about the plaintiff's goods or services. But Plaintiffs' claim does not concern any alleged representation by JPMorgan about the quality of Plaintiffs' goods or services; rather, they allege only that the supposed blacklist made it harder for Plaintiffs to access banking services provided by others.

Consistent with New York and Ohio authority that subsumes trade libel within the cause of action for product disparagement, *see supra* at 15 n.7, courts applying both States' law are careful to limit these claims to situations involving the plaintiff's goods or services. *See, e.g.*, *Accelerated Moving & Storage v. Herc Rentals, Inc.*, 2022 WL 3907764, at *3 (Ohio Ct. App. Aug. 20, 2022) ("Ohio courts have determined that the statute applies only 'when the quality of a business's goods or services has been demeaned'" (citation omitted)); *Enigma*, 194 F. Supp. 3d at 291 ("[T]rade

libel is based on statements confined to denigrating the quality of a business' *services* [*or products*]." (emphasis in original; cleaned up)).

That is not Plaintiffs' claim here. The Complaint alleges that "[t]his blacklist is reserved for individuals and businesses that are not in good standing, that have engaged in malfeasant acts in connection with their financial practices or have otherwise engaged in conduct worthy of being denied critical banking products and services[.]" Compl. ¶ 88. It further alleges, without specifics, that Plaintiffs' inclusion on the "blacklist" caused them "financial and reputational harm." *Id.* ¶ 92. But Plaintiffs nowhere suggest that JPMorgan impugned *the products or services* that Plaintiffs offer. Indeed, the Complaint does not allege that Plaintiffs offer any products or services at all. Plaintiffs' claim thus fails as a matter of law. *See, e.g.*, *Pasternack v. Lab'y Corp. of Am.*, 2014 WL 4832299, at *20 (S.D.N.Y. Sept. 29, 2014), *aff'd,* 839 F.3d 151 (2d Cir. 2016) (dismissing New York trade libel claim where statements did not concern "the quality of any goods or services" Plaintiff provided); *AIX Specialty Ins. Co. v. Big Limo, Inc.*, 547 F. Supp. 3d 757, 765 n.4 (S.D. Ohio 2021) (same under Ohio law). In other words, even if this "blacklist" as alleged by Plaintiffs existed, placement upon it would not be actionable as trade libel because its characteristics as described do not address Plaintiffs' business offerings.

**4. Plaintiffs failed to plead special damages.**

The eight Plaintiffs whose trade libel claim is governed by New York law also fail to plead the requisite special damages with specificity, and in any event, they are precluded from seeking special damages by the terms of their account agreements, as well as the DAA attached to the Complaint.

New York requires a plaintiff to allege special damages to state a trade libel claim. *See Enigma*, 194 F. Supp. 3d at 291. "An adequate pleading of special damages must clear several hurdles. First, special damages are limited to losses having pecuniary or economic value, and must

be fully and accurately stated, with sufficient particularity to identify actual losses. … In addition, special damages must be the natural and immediate consequence of the disparaging statements to be recoverable." *Eminah Props. LLC v. Energizer Holdings, Inc.*, 531 F. Supp. 3d 593, 608 (E.D.N.Y. 2021). Federal Rule of Civil Procedure 9(g) similarly requires special harm to be pleaded with particularity.

Plaintiffs do not allege sufficient detail about the harms they allegedly suffered. They allege only that they were "denied access to critical banking services and products" and "suffered and continue to suffer overwhelming financial and reputational harm." Compl. ¶¶ 91–92. These are not "particularly" stated financial harms. *See, e.g.*, *Cammarata v. Cammarata*, 878 N.Y.S.2d 163, 164 (N.Y. App. Div. 2009) (holding that "general allegations of injury to reputation" are insufficient to allege special damages); *Enigma*, 194 F. Supp. 3d at 292 (ruling allegation that plaintiff "has and will continue to suffer significant monetary and reputational injury in amounts that will be proven at trial" was insufficient for special damages). Qualifying financial harms are identifiable lost customers and sales caused by the purported libel. *See Soter Techs., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 410–11 (S.D.N.Y. 2021). Plaintiffs' bald and unsupported allegation that the "blacklisting" caused them *five billion dollars* in damages, with no accounting of those damages or how they were calculated, does not meet the Rule 9(g) standard. And Plaintiffs' contractual waiver of special damages would preclude them from satisfying this element regardless. *See, e.g.*, Decl. ¶ 11(a).

**5. Plaintiffs have not plausibly alleged actual malice.**

"[P]ublic figures who seek damages for defamatory statements must show that the statements were made with 'actual malice.'" *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). "[M]alice must be alleged plausibly in accordance with Rule 8," which requires "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' actual malice." *Id.* at 545–

46 (alteration omitted). But Plaintiffs have not alleged that JPMorgan published any "blacklist"-related communication with actual malice—that is, "with knowledge of falsity or reckless disregard as to truth or falsity." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 511 (1991). Plaintiffs' failure to plead actual malice requires dismissal of their trade libel claim. *See Biro*, 807 F.3d at 546; *Cabello-Rondon v. Dow Jones & Co.*, 720 F. App'x 87, 88 (2d Cir. 2018).

Plaintiffs nowhere allege that JPMorgan published a defamatory statement about them with knowledge of, or reckless disregard for, the fact that the statement was false. (Indeed, apart from putting them on an unspecified "blacklist," Plaintiffs do not allege that JPMorgan said *anything* about Plaintiffs.) Instead, all Plaintiffs offer is a flat assertion in the Complaint's introduction that their inclusion on the list was "an intentional and malicious falsehood." Compl. at 4. "[N]aked assertions" and "conclusory statements" of this sort are not enough. *Biro*, 807 F.3d at 544. "[A]part from this conclusory assertion," which this Court "need not … take as true," the Complaint contains no allegations whatsoever that anyone at JPMorgan doubted the accuracy of any information purportedly shared to the "blacklist." *Kitani v. New York City Transit*, 2022 WL 874781, at *12 (S.D.N.Y. Mar. 24, 2022) (Broderick, J.); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964) (Plaintiffs must show actual malice on the part of "the persons in the [] organization having responsibility for the publication" in question). Because Plaintiffs make no attempt to show that JPMorgan "'entertained serious doubts as to the truth'" of the published account, their Complaint does not "give rise to a plausible inference of actual malice." *Biro*, 807 F.3d at 544, 546.[9]

[9] Nor can Plaintiffs dispute this standard applies to their allegations. President Trump is unquestionably a public figure. *See* Compl. at 3 ("President Donald J. Trump has maintained a highly public persona."); *see also Trump v. Dow Jones & Co.*, 2026 WL 979572, at *7 n.12 (S.D. Fla. Apr. 13, 2026) ("[T]here is no dispute that President Trump is a public figure."); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974) (articulating test for general public figures). For the

### III. Amendment Would Be Futile.

Plaintiffs' Complaint should be dismissed with prejudice because no amendment could cure its defects. Leave to amend should be denied as futile where an amended complaint "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Where the "problem with … causes of action is substantive," "better pleading will not cure it" and "[r]epleading would thus be futile." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). That is precisely the case here; each of Plaintiffs' claims suffers from substantive, fatal defects arising from the governing statute, the law of the case, or the parties' own contracts. Thus, no additional allegations could change the fact that dismissal under Rule 12(b)(6) is required.

The claim against Mr. Dimon (Count II) is foreclosed by statute and by the law of the case. Judge Williams has already held that Mr. Dimon is a "person regulated" by federal banking law and thus clearly within FDUTPA's safe harbor such that "there is no possibility that Plaintiffs can establish a FDUTPA claim against him." Dkt. 36 at 8. Nothing Plaintiffs could add would alter either the text of the statutory exemption or Mr. Dimon's status as JPMorgan's CEO, and Judge Williams's ruling is law of the case in any event. Leave to amend this claim thus should be denied. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("where a plaintiff is

---

same reason, the remaining Plaintiffs—which the Complaint alleges all "feature President Trump's name or are otherwise affiliated with him" in the public eye, and are all part of the "Trump Organization," Compl. at 3—are public figures too. *See, e.g.*, *Trump Media & Tech. Grp. Corp. v. WP Co.*, 720 F. Supp. 3d 1203, 1209 (M.D. Fla. 2024) (holding that Trump Media & Technology Group is a general public figure); *Schiavone Constr. Co. v. Time, Inc.*, 619 F. Supp. 684, 707 (D.N.J. 1985) (holding that the public-figure status of a natural person and a corporation bearing his name is the same). And Plaintiffs allege that the supposed "blacklist" involves issues of public concern, such as account holders' "malfeasant … financial practices" and other matters relevant to the safety and soundness of the national banking system. Compl. ¶ 88.

unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice").

Plaintiffs' implied-covenant and declaratory-judgment claims (Counts III and IV) are likewise incurable. Those claims fail because the agreements Plaintiffs signed gave JPMorgan an express right to close their accounts, *see, e.g.*, Decl. ¶ 11(b), and set a reasonable two-year contractual limitations period for account-related claims, *see, e.g.*, Decl. ¶ 11(d). Those are features of the contracts, not curable defects in Plaintiffs' pleading. Plaintiffs cannot plead around the express terms of the instruments on which this claim depends. And a claim barred by "the applicable statute of limitations … cannot be remedied by any amendments." *Apostolidis v. JP Morgan Chase & Co.*, 2012 WL 5378305, at *9 (E.D.N.Y. Nov. 2, 2012).

Nor could Plaintiffs' trade libel claim (Count I) be resuscitated by repleading. As with the implied-covenant and declaratory-judgment claims, an amended pleading could not change the fact that the alleged years-old blacklisting is time-barred under New York and Ohio law. And Plaintiffs cannot allege that JPMorgan disparaged the quality of goods or services that Plaintiffs offer, because their grievance is that they were denied banking services provided by others. Finally, the special damages that New York law requires trade libel to remedy are expressly waived by their account agreements. None of these defects could be cured by a more detailed pleading. *See Cortec*, 949 F.2d at 48.

* * *

For the foregoing reasons, Plaintiffs' claims against JPMorgan fail—multiple times over—and should be dismissed with prejudice.

**CONCLUSION**

Plaintiffs' Complaint should be dismissed with prejudice.

Date: October 13, 2026

Respectfully submitted,

*/s/ Jayant W. Tambe*
Jayant W. Tambe
Amanda L. Dollinger
JONES DAY
250 Vesey St
New York, NY 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Email: jtambe@jonesday.com
Email: adollinger@jonesday.com

Noel J. Francisco (*pro hac vice* forthcoming)
Charlotte H. Taylor
JONES DAY
51 Louisiana Ave, NW
Washington, DC 20001
Telephone: (202) 879-3939
Email: njfrancisco@jonesday.com
Email: ctaylor@jonesday.com

*Attorneys for Defendants*
*JPMorgan Chase Bank, N.A. and James Dimon*

**CERTIFICATE OF WORD COUNT**

As required by S.D.N.Y. Local Rule 7.1(c), I hereby certify that this Memorandum of Law In Support Of Defendants' Motion to Dismiss the Complaint contains 7,834 words, excluding the parts of the document that are exempted by rule.

*/s/ Jayant W. Tambe*
Jayant W. Tambe

*Attorney for Defendants*
*JPMorgan Chase Bank, N.A. and James Dimon*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 13, 2026, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, and that it is being served this date on all counsel of record via transmission of Notices of Electronic Filing generated by the CM/ECF system.

*/s/ Jayant W. Tambe*
Jayant W. Tambe

*Attorney for Defendants*
*JPMorgan Chase Bank, N.A. and James Dimon*